UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____x

**LAKHWINDER SINGH**

     *Petitioner,*

**KEN GENALO, NY Director, Field Office,**
     **Enforcement and Removal Operations.**
     **U.S. Immigration and Customs Enforcement;**

**TODD LYONS, Director, U.S. Immigration**
     **and Customs Enforcement;**

**MARKWAYNE MULLIN, Secretary of the U.S. Department of**
     **Homeland Security; and**

**TODD BLANCHE, Acting Attorney General of the**
     **United States,**

**RAUL MALDONADO, Warden MDC Brooklyn, USBOP**

     *Respondents*

_____x

                   **EMERGENCY PETITION**
                   **A No. 205-586-500**

**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY ORDER
TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER**

1. **LAKHWINDER SINGH,** ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This application is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal and to preserve this Court's jurisdiction.

2. This Petition challenges the legality of Petitioner's arrest and continued detention under the Fourth Amendment, 8 U.S.C. §§ 1225, 1226, 1231 and 1357, the Due Process Clause, and binding agency regulations. The central question presented is straightforward: under what lawful statutory authority is Petitioner currently detained, and was that authority validly invoked?

3. The Supreme Court has emphasized that freedom from physical restraint lies at the core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where detention is challenged, the government must identify and justify the legal authority for incarceration.

4. Section 2243 provides that once a habeas petition is presented, *the Court shall "forthwith award the writ*

*or issue an order directing the respondent to show cause why the writ should not be granted," and that the custodian "shall make a return certifying the true cause of the detention."* The statute further contemplates expedition, providing that the return shall be made within 3 days unless additional time is allowed for good cause.

5.  28 U.S.C. § 2241(c)(3) provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." The Fifth Amendment requires that "[n]o person shall be . . . be deprived of life, liberty, or property, without due process of law." U.S. Cont. amend. V. These due process rights apply to all persons in the United States, whether citizens or not. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

6.  "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); see also *Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

7.  "The typical remedy" for unlawful executive detention," "is, of course, release," if the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "[T]he traditional function of the writ is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he have been against law deprived of it." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (internal citation omitted). Habeas corpus "is perhaps the most important writ . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391,

2

400 (1963) (internal citation omitted).  And "if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Id*. at 402.

8.  If a detention results from an agency violating its own regulations, the Government may not have provided the detainee with the process to which he is due under the Constitution, and the writ can issue. *See Funes v. Francis*, --- F. Supp. 3d ---, No. 25-CV-7429, 2025 WL 3263896, at *24–25 (S.D.N.Y. Nov. 24, 2025); *E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414–15  (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528, 2025 WL 1927931, at *3–4 (S.D.N.Y. July 13, 2025); *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at *2–3 (S.D.N.Y. Jan. 15, 2026).  "The common-law history of the writ underscores that the traditional remedy in habeas is release from illegal custody." *Funes*, 2025 WL 3263896, at *24 (citing *Preiser v Rodriguez*, 411 U.S. 475, 484 (1973)); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention." (emphasis in original)); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008).

**<u>THE ILLEGAL ARREST</u>**

9.  LAKHWINDER SINGH is a 31-year-old Indian man, a resident of Bedford Park, in the Bronx, NY, who has resided in the US for the last 13 years.

10. He has a fixed address at 215 East 201st Street, 4th Floor, Bronx. NY

11. The Petitioner entered the US-Mexico border at Nogales, AZ, on April 18th, 2013 when he was 18-years old.

12. At that time, he was arrested and then released under his own recognizance after passing his credible fear interview.

13. On May 9, 2013, he was given a defective Notice to Appear I-862 in Florence Arizona that did not state a time and place for him to appear.

14. The Notice stated that the date and place to appear were "to be set," but he never received notice of the court hearing.

3

15. Later, Petitioner applied for asylum and for a special juvenile immigrant visa as an unaccompanied minor.

16. Today, the client is married to Ashley Cole, a United States citizen, whom he married in 2024.

17. On April 21, 2021, he was arrested at a marriage-based interview at USCIS offices.

18. His wife applied for him for an I-130 and an I-485, and those applications were pending at the time of his arrest.

19. When he was arrested, the ICE agents did not present a warrant, nor did they have probable cause to arrest him.

20. Upon information and belief, the arrest was conducted without an administrative arrest or search warrant.

21. He was given no opportunity to be heard on the decision to detain and arrest him, and this occurred without due process.

22. He was not permitted to make any phone calls, and he did not even know where he was being taken to.

23. DHS's novel policy -overruling decades of established precedent- says he is not entitled to any hearing whatsoever and could be held in jail for months or years if he decides to appeal his case.

24. DHs is now incarcerating him indefinitely without an individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

25. ICE arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the *minimum* requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

26. When ICE agents later fingerprinted him and booked him at DHS processing offices, they did not follow statutorily and constitutionally guaranteed procedures for due process.

27. That is why Petitioner now comes to this Honorable Court seeking assistance.

**Emergency Habeas Petition, Request for Immediate Order to Show Cause Under 28 U.S.C. § 2243, and Application for Temporary Restraining Order to Preserve Jurisdiction and Meaningful Review**

28. Petitioner respectfully submits this emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his arrest and continued detention by Respondents.

29. Because Petitioner is presently in federal immigration custody and subject to transfer at any time, immediate judicial intervention is necessary to preserve this Court's jurisdiction and ensure meaningful review of the legality of detention.

30. Pursuant to 28 U.S.C. § 2243, Petitioner respectfully requests that the Court issue an Order to Show Cause directing Respondents to demonstrate why the writ should not be granted and to certify the true cause of Petitioner's detention. Section 2243 requires prompt judicial inquiry into executive restraint and the custodian to file a return setting forth the statutory and factual basis for confinement.

31. Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending swift adjudication of the habeas petition:

    a) Prohibiting Respondents from transferring Petitioner outside this District, absent further order of this Court

    b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

    c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

    d) requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;

    e) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition,

    f) granting the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

    g) awarding reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

    h) ordering Respondents not re-detain Petitioner without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Khabazha v. United States 2:26-cv-02538 Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025); see *Jagtar Singh v Blanche*, 26-cv-2538 slip op (E.D.N.Y. May 6, 2026)

    i) ordering that Respondents shall return to Petitioner all personal property belonging to

Petitioner that was seized at the time of detention and that is currently in their custody, including but not limited to all identification and work authorization cards, clothing, and money. *Jagtar Singh v Blanche* at 9.

j) Granting such other and further relief as this Court deems just and proper.

## PREFACE

**Petitioner's Arrest and Detention Without Notice of the Asserted Statutory Basis for Custody, Without a Contemporaneous Individualized Custody Determination, and Without the Administrative Record Violates the Fourth Amendment, the Fifth Amendment, the Immigration and Nationality Act, and Governing Regulations**

32. At the time of arrest, Petitioner was not specifically advised under which statutory provision DHS claimed authority to arrest and detain him. He was not told whether DHS was proceeding under 8 U.S.C. § 1225, § 1226, or § 1231, and was not provided with any official custody or detention documents, or any part of the administrative file, or contemporaneous custodial documentation sufficient to determine which detention framework DHS intends to invoke. Under those circumstances—particularly where this Petition is being filed on an emergency basis to preserve jurisdiction before transfer and before DHS has produced the record—Petitioner is compelled to plead in the alternative. That is not speculation for its own sake; it is a necessary response to DHS's failure to identify the statutory basis for custody at the time liberty was first restrained.

33. This alternative pleading is also warranted because recent immigration habeas litigation in New York and New Jersey has revealed a recurring pattern of shifting detention theories, including efforts by DHS to characterize detention under 8 U.S.C. § 1225 in cases where individuals were arrested in the interior after extended residence in the United States and where, under prior practice, detention would have proceeded under § 1226. Courts addressing these cases have repeatedly noted the inconsistency, imprecision, and after-the-fact nature of DHS's statutory theories. See, e.g., *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC) (E.D.N.Y. Nov. 10, 2025) (describing DHS's detention theories as "imprecise and shifting" and explaining that the inconsistencies "call into question the basis for [the] detention") ; *Rivera Zumba v. Bondi*, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) (describing the agency's new practice of classifying persons long present in the United States, "for the

6

first time," as arriving aliens seeking admission) . In light of that pattern, and because DHS has not disclosed the records needed to identify the precise detention theory here, Petitioner must preserve all applicable statutory and constitutional challenges from the outset.

34. Whether DHS ultimately claims detention under § 1225, § 1226, or § 1231, the same fundamental principles govern. DHS may not deprive a person of liberty without identifying a lawful statutory basis for custody, without complying with the procedures that govern that custody framework, and without affording constitutionally adequate process, including notice and a meaningful opportunity to be heard. Because DHS did not identify the asserted statutory basis for arrest at the time of detention, and because the record necessary to test that assertion has not been produced, Petitioner pleads in the alternative below and reserves the right to amend as soon as DHS discloses the administrative file and custodial documents.

35. Petitioner files this action at the inception of custody, before Respondents have produced the administrative file or any reliable record identifying the legal basis for arrest or detention. As of filing, neither Petitioner nor counsel has been provided any contemporaneous custodial documentation, including any executed administrative warrant, charging document, reinstatement notice, revocation notice, custody determination, or record establishing whether Respondents purport to proceed under 8 U.S.C. § 1225, § 1226, or § 1231. Petitioner therefore pleads in the alternative, on information and belief, that whichever detention provision Respondents may later invoke, the arrest and continued detention are unlawful because they were imposed without a lawful statutory basis, without the procedures required by regulation, and without constitutionally adequate notice and opportunity to be heard.

36. The governing constitutional principles are settled. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law, and "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That protection extends to noncitizens. *Id.* at 693. And when executive detention is imposed outside the ordinary

7

criminal process, habeas review must be searching and real. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). The Second Circuit has likewise held that immigration detention implicates the most significant liberty interest and that challenges to the constitutionality of detention procedures are properly brought in habeas. See *Velasco Lopez v. Decker*, 978 F.3d 842, 850–54 (2d Cir. 2020); *Hechavarria v. Sessions*, 891 F.3d 49, 53–55 (2d Cir. 2018). As Judge Broderick recently summarized in granting habeas relief in a supervision-revocation case, "[i]f a detention is the result of an agency violating their own regulations, then the Government may not have provided the detainee with the process that they are due under the constitution and the writ can issue." *Ndoye v. Joyce*, No. 25-CV-8856 (VSB), slip op. at 5 (S.D.N.Y. Feb. 6, 2026) .

## THIS CASE

37. This is an emergency habeas case about a basic constitutional and statutory question. *Can DHS arrest, seize him, search him, and arrest Petitioner at a USCIS interview without a valid arrest warrant?* And can DHS then keep detaining him without a hearing and without complying with statutory and constitutional safeguards?

38. As in many other cases, DHS will likely produce an after-created arrest warrant and claim the arrest was based on it, even though the warrant was generated after the arrest and was not previously issued or approved through the chain of command as the statute and regulations require.

39. The law says that civil immigration detention is a grave deprivation of liberty and that due process requires meaningful safeguards at the moment the Government decides to arrest and detain someone. Courts in this District have repeatedly ordered relief under habeas where ICE detained people without making the individualized assessment that § 1226(a) and the regulations require, and where ICE tried to justify detention after the fact instead of through contemporaneous process. That includes *Lopez Benitez*, *Barco Mercado*, *Kelly*, *Valdez*, *Chipantiza-Sisalema*, and *Gonzalez*.

40. Petitioner therefore respectfully asks this Court to act now: to prevent transfer, compel disclosure of the key documents, require Petitioner's production before the Court, and order immediate release.

## JURISDICTION AND VENUE

41. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

42. The venue is proper in the EASTERN DISTRICT OF NEW YORK because the Petitioner was seized in New York, and is detained at MDC Brooklyn, NY. New York. Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

43. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

## THE PARTIES

44. LAKHWINDER SINGH is a resident of the Bronx, NY.

45. Respondent Ken Genalo is the Field Director, Enforcement & Removal Operations of ICE, and is a legal custodian of Petitioner.

46. Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

47. Respondent Markwayne Mullins is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention

48. Respondent Todd Blanche is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.

49. Respondent Raul Maldonado is the warden of the Metropolitan Detention Center in Brooklyn, NY.

## ARGUMENT

## CLAIM ONE

**PETITIONER'S WARRANTLESS ARREST AND DETENTION WITHOUT A CONTEMPORANEOUS, INDIVIDUALIZED CUSTODY DETERMINATION VIOLATES THE FOURTH AMENDMENT, THE FIFTH AMENDMENT, AND THE IMMIGRATION AND NATIONALITY ACT**

50. The Fifth Amendment bars the Government from depriving any person of liberty without due process of law. Freedom from physical restraint lies at the core of the liberty the Constitution protects. *Zadvydas v.*

9

*Davis*, 533 U.S. 678, 690 (2001). That protection extends to noncitizens held in immigration custody. *Id.* at 693. And where detention results from executive action without the normal protections of criminal process, habeas courts must apply the "most searching review." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008); see also *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

51. These principles apply in full in immigration detention cases. In *Jennings v. Rodriguez*, the Supreme Court rejected a statutory bond-hearing rule as a matter of construction, but it made clear that constitutional challenges to immigration detention remain fully available in habeas. 583 U.S. 281, 292–95 (2018). And in *Demore v. Kim*, the Court upheld mandatory detention only in a setting it understood to be limited in duration and accompanied by the procedures that Congress had prescribed. 538 U.S. 510, 528–31 (2003). So even when a detention statute exists, detention still must rest on lawful authority and constitutionally sufficient process.

52. Judge Choudhury's decision in *Rodriguez-Acurio v. Almodovar* is central. There, the court held that the petitioner's detention "falls squarely within the discretionary detention framework of Section 1226(a), which permits detention when a DHS officer has made an individualized determination that a noncitizen poses a flight or safety risk." The court then found that "[n]othing in the record before this Court shows any change in circumstances" and that "[n]o one at DHS or ICE ever made any individualized determination that Rodriguez-Acurio poses a flight or public safety risk before she was suddenly arrested and detained." The court held that detention without "any notice or opportunity to be heard before a DHS officer or an immigration judge" violated due process, and it granted the petition. *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *1, *23–24 (E.D.N.Y. Nov. 28, 2025) .

53. That reasoning fits here. Petitioner was seized in the interior, not processed as a newly arriving alien at a port of entry, and not given a contemporaneous custody determination based on danger or flight risk. Instead, he was arrested first, detained first, and only later did the DHS try to explain the detention through paperwork and litigation. *Rodriguez-Acurio* rejects that sequence.

54. The Southern District decisions line up with this. In *Lopez Benitez v. Francis*, Judge Ho held that the petitioner was detained under § 1226(a), not § 1225. He rejected the DHS 's post hoc shift in statutory theory and held that the court could not credit "Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation." He also held that "before the Government may exercise such discretion to detain a person," § 1226(a) and 8 C.F.R. § 1236.1(c)(8) "require ICE officials to make an individualized custody determination." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484–85, 490 (S.D.N.Y. 2025) .

55. Where, as here, Petitioner was seized without a warrant, without a contemporaneous individualized custody determination, without any real evaluation of flight risk or danger, and is now detained based on a litigation-driven statutory theory, the detention is unlawful from the beginning. Under the repeated holdings of the Eastern and Southern Districts, the proper remedy is immediate release, not remand. Respondents unlawfully re-detained Petitioner without first revoking his parole/release through a constitutionally adequate process.

**<u>ICE Unlawfully Released Petitioner Upon Arrival to the U.S. in 2013, Then Re-Detained Him Years Later Without Notice, Revocation, or a Meaningful Opportunity to Be Heard</u>**

56. Petitioner was initially intercepted by immigration authorities upon entering the United States in 2013, he passed a credible interview, was provided a defective ntice to appear, placed in removal proceedings, and then released from DHS custody on parole and/or on his own recognizance. That release was not meaningless. It reflected DHS's determination that Petitioner could remain at liberty while his immigration case proceeded, and—under the governing regulatory framework—that he did not present a danger to persons or property and was likely to appear for future proceedings. See 8 C.F.R. § 236.1(c)(8) (authorizing release only where the noncitizen demonstrates that release would not pose danger and that he is likely to appear); see also 8 C.F.R. § 212.5(b) (parole regulation requiring that parolees present neither a security risk nor a risk of absconding). (eCFR)

57. Yet on April 21, 2026,  ICE officers arrested Petitioner at a USCIS adjustment of status interview with his U.S. citizen wife and placed him back into immigration detention <u>without first providing written notice that his parole or release had been revoked, without serving any official revocation decision</u>

before the arrest, without identifying the alleged changed circumstances justifying re-detention, and without affording him any meaningful opportunity to respond before his liberty was taken. That sequence matters.

58. The Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart" of the liberty protected by due process. *Zadvydas v. Davis*, 533 U.S. 678, 690, 693 (2001); see also *Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

59. DHS's own regulations likewise distinguish lawful revocation from post hoc detention. Where parole has not expired automatically by its own terms, parole "shall be terminated upon written notice to the alien," and the person is then restored to the status he had at the time parole was granted. 8 C.F.R. § 212.5(e)(2)(i). (eCFR) That written-notice requirement is not a technicality. It is the mechanism by which DHS communicates that it has made an actual revocation decision, identifies the basis for that decision, and permits the noncitizen to contest whether the agency has lawfully withdrawn the liberty it previously granted.

### DHS Cannot Detain Petitioner Based on a Defective Notice Process and an Unproven In Absentia Removal Order

60. Petitioner should be released because DHS is detaining him based on a removal process that did not give him the basic notice required by statute and due process. The Government served Petitioner with a Notice to Appear that did not state the date, time, or place of his immigration hearing. It instead stated that those details were "to be set." That document did not tell Petitioner when or where to appear. A notice that does not tell a person when and where to appear cannot, by itself, provide a meaningful opportunity to be heard.

61. Congress required that a Notice to Appear specify, among other things, the "time and place" of the removal proceedings. 8 U.S.C. § 1229(a)(1)(G)(i). The Supreme Court has recognized that a document missing that information is not a complete statutory notice to appear for purposes of the INA's notice scheme. *Pereira v. Sessions*, 585 U.S. 198, 202, 211–12 (2018); *Niz-Chavez v. Garland*, 593 U.S. 155,

160–61, 171–72 (2021).

62. Nor may DHS cure that defect by simply assuming Petitioner received some later hearing notice. Where a respondent is ordered removed in absentia, the Government bears the burden to prove notice. The statute provides that a noncitizen may be ordered removed in absentia only if DHS establishes, by **"clear, unequivocal, and convincing evidence,"** that written notice was provided and that the person is removable. 8 U.S.C. § 1229a(b)(5)(A). The immigration-court regulation likewise requires clear, unequivocal, and convincing evidence that written notice of the **time and place** of proceedings, and notice of the consequences of failing to appear, were provided. 8 C.F.R. § 1003.26(c)(2).

63. The Supreme Court's decision in *Campos-Chaves* does not help DHS unless DHS can prove Petitioner actually received a later notice for the hearing he allegedly missed. *Campos-Chaves* held only that a defective initial NTA may support an in absentia order where the respondent later received a proper notice of hearing for the hearing at which he failed to appear. *Campos-Chaves v. Garland*, 602 U.S. ___ (2024). Here, Petitioner's position is different: he did not receive notice of the hearing at all. If DHS cannot produce reliable proof that Petitioner received a later notice stating the date, time, and place of the hearing, then DHS cannot rely on the in absentia process as a lawful basis to detain him.

64. Second Circuit law supports this rule. In *Lopes v. Gonzales*, the Court of Appeals held that when the Government relies on mailed notice, the agency must consider the evidence of non-receipt and cannot mechanically rely on a mailing presumption. *Lopes v. Gonzales*, 468 F.3d 81, 84–86 (2d Cir. 2006). The BIA has likewise held that when notice is sent by regular mail, the presumption of delivery is weaker than the presumption for certified mail, and adjudicators must consider circumstantial and corroborating evidence of non-receipt. *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673–74 (B.I.A. 2008).

65. The BIA has also recognized that an in absentia order cannot be entered unless the respondent received, or can legally be charged with receiving, the Notice to Appear containing the statutory address warnings and failure-to-appear consequences. *Matter of G-Y-R-*, 23 I. & N. Dec. 181, 187–90 (B.I.A. 2001). That rule matters here because the Government cannot convert a defective, incomplete, or unreceived notice process into a lawful basis for detention. If DHS claims Petitioner failed to appear, DHS must first prove

13

that he was given notice in the manner Congress required.

66. Because Petitioner did not receive notice of his hearing, any in absentia order based on that missed hearing is subject to rescission. A motion to reopen based on lack of notice may be filed at any time. 8 U.S.C. § 1229a(b)(5)(C)(ii). The filing of such a motion also stays removal while the immigration judge adjudicates the motion. 8 U.S.C. § 1229a(b)(5)(C). DHS therefore cannot treat the in absentia order as a clean, uncontested custody basis while refusing Petitioner a meaningful custody hearing.

67. DHS also failed to follow the required custody process. Petitioner was previously released on his own recognizance after passing credible fear. If DHS wanted to revoke that release, it had to proceed under the INA's custody framework and the governing regulations, not through a warrantless arrest at a marriage-based USCIS interview. Under 8 C.F.R. § 236.1 and § 1236.1, custody and release decisions are governed by formal custody procedures, including custody determinations and review mechanisms. Immigration judges have authority to review custody determinations under 8 C.F.R. § 1003.19.

68. The Government's warrantless arrest authority is also limited. INA § 287(a)(2), 8 U.S.C. § 1357(a)(2), permits a warrantless civil immigration arrest inside the United States only where the officer has reason to believe the person is removable **and** is likely to escape before a warrant can be obtained. DHS cannot satisfy that standard where Petitioner appeared for a scheduled marriage-based USCIS interview, lived at a fixed Bronx address, had pending family-based applications, and was married to a United States citizen. Those facts show appearance and stability, not flight.

69. At minimum, Petitioner is entitled to release unless DHS promptly provides a lawful custody hearing at which the Government bears the burden. In the Second Circuit, detention under 8 U.S.C. § 1226(a) must comply with due process, and prolonged detention without the Government justifying custody violates the Fifth Amendment. *Velasco Lopez v. Decker*, 978 F.3d 842, 855–56 (2d Cir. 2020). The proper remedy is a hearing where the Government must prove, by clear and convincing evidence, that continued detention is necessary because the person is a danger or flight risk. Id.

70. Recent Second Circuit authority also rejects DHS's attempt to deny bond hearings to long-present interior respondents by reclassifying them as mandatory-detention "applicants for admission." In *Cunha*

14

*v. Freden*, No. 25-3141-pr, the Second Circuit held that a long-present noncitizen arrested in the interior after entry without inspection is detained under § 1226(a), not § 1225(b)(2)(A), and is therefore eligible for bond. That rule applies with special force here: Petitioner has lived in the United States for approximately thirteen years, has a fixed address, has a U.S.-citizen spouse, and was arrested in the interior while pursuing immigration benefits.

71. For these reasons, DHS cannot lawfully detain Petitioner based on a defective and unproven notice process. The Court should order Petitioner released, or, at minimum, order Respondents to provide an immediate custody hearing before a neutral adjudicator at which DHS bears the burden of proving by clear and convincing evidence that Petitioner presents a danger or flight risk, with consideration of less restrictive alternatives to detention.

72. The same principle applies where DHS characterizes the original release as release on recognizance under 8 U.S.C. § 1226 rather than parole under 8 U.S.C. § 1182(d)(5)(A). Section 236 regulations provide that release may be revoked, but they do not authorize ICE to evade the Constitution by arresting a previously released noncitizen first and supplying the reasons later. See 8 C.F.R. § 236.1(c)(9). (eCFR) As recent courts have recognized, once the Government has released a noncitizen from custody, that release creates a protected liberty interest and an implied promise that liberty will not be withdrawn absent a lawful basis and fair process. See *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Garro Pinchi v. Noem*, No. 5:25-cv-05632-PCP, slip op. at 4–7 (N.D. Cal. July 24, 2025).

73. The Government cannot convert possible changed circumstances into a license for summary seizure. Under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), due process requires consideration of the private liberty interest, the risk of erroneous deprivation, and the Government's interest. Each factor favors Petitioner. His liberty interest is at its apex because he was living in the community pursuant to DHS authorization. The risk of error is substantial because ICE arrested him without first determining— through any neutral or adversarial process—whether the alleged criminal arrest actually justified re-detention. And the Government's legitimate interests are fully served by pre-deprivation notice and a prompt custody hearing; immigration custody hearings are routine and far less burdensome than

15

unlawful detention. See *Garro Pinchi*, No. 5:25-cv-05632-PCP, slip op. at 7–10.

74. Recent habeas decisions in this Circuit and elsewhere reinforce the point. In *Qasemi v. Francis*, No. 1:25-cv-10029, slip op. at 21–23 (S.D.N.Y. 2025), the court recognized that parole may terminate without written notice only in limited circumstances such as expiration by its own terms, and otherwise must terminate "upon written notice"; it further rejected the notion that a formerly paroled noncitizen is automatically returned to mandatory physical detention merely because parole ends. (Justia) In *Garro Pinchi*, the court required release and enjoined re-detention without notice and a pre-detention hearing before a neutral decisionmaker after ICE arrested a previously released noncitizen without pre-deprivation process. And in *O.F.B. v. Maldonado*, No. 25-CV-6336, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025), the Eastern District of New York addressed the same recurring theory that a previously released noncitizen may be re-detained under mandatory detention despite prior release, with later EDNY decisions applying that reasoning to previously paroled or recognizance-released petitioners. (CaseLaw)

75. Respondents' failure to comply with the required protocol independently renders the detention unlawful. The agency either revoked Petitioner's parole/release before the arrest or it did not. If it did, it failed to provide the required written notice, explanation, and opportunity to respond before the deprivation. If it did not, then Petitioner was arrested while his parole/release remained legally operative, and the detention is ultra vires. Either way, Respondents cannot justify custody by issuing a revocation notice after the fact, by relying on a conclusory custody form, without showing that an authorized official made an individualized, pre-detention determination based on changed circumstances.

**CLAIM TWO**

**PETITIONER'S WARRANTLESS SEIZURE AND ARREST VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND THE GOVERNING IMMIGRATION ARREST REGULATIONS**

**The Fourth Amendment Applies Fully to Interior Civil Immigration Arrests**

76. The Fourth Amendment applies fully to civil immigration arrests in the interior of the United States. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984). The Second Circuit has recognized that "[t]he Fourth Amendment's protections extend to all persons within the United States, including aliens." *Almeida-*

*Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006). So warrantless civil immigration arrests are limited by both the Constitution and the INA.

77. That means the DHS cannot seize first and explain later. If ICE officers seized Petitioner without presenting a warrant, without articulating probable cause, and without identifying a lawful basis for the seizure at the time, the arrest was unreasonable under the Fourth Amendment and outside the statute. See *Dunaway v. New York*, 442 U.S. 200, 208–09 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 96 (1964).

78. Because the initial seizure was unlawful, the detention that followed is unlawful too.

### The Administrative-Warrant Scheme Requires Prior Authorization, Not Later Papering

79. The warrant rules are not minor technicalities. They are part of the lawful method for making interior immigration arrests. Before an arrest on a warrant, DHS regulations require prior issuance of Form I-200 by a designated official under 8 C.F.R. § 287.5(e)(2). That authority is concentrated in supervisory and specially delegated officers. The point is to require review before arrest, not afterward.

80. The regulations also limit who may make a warrantless arrest at all. Under 8 C.F.R. § 287.5(c)(1), only designated officers may exercise that power. And 8 C.F.R. § 287.8(c)(2) says that such officers may arrest without warrant only if they have reason to believe the person is removable and "is likely to escape before a warrant can be obtained." The same regulation adds that a warrant "shall be obtained in every instance where the person is not likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). That language is mandatory.

81. The regulations also require basic notice at the time of arrest. The officer must identify himself or herself as an immigration officer and state that the person is under arrest and the reason for the arrest. 8 C.F.R. § 287.8(c)(2)(iii). Where officers do not show a warrant, do not state the basis for arrest, and do not comply with these rules, the arrest is not merely sloppy. It is unlawful.

82. That is why later-issued paperwork cannot save a street arrest that was unlawful when it happened. The sequence matters. The warrant must come first. A later I-200 does not prove compliance. It proves the opposite.

### A Warrantless Immigration Arrest Required Probable Cause and a Real Escape-Risk Basis

17

83. Even if there were a lawful initial encounter, the DHS still needed probable cause before turning it into an arrest. The constitutional rule is basic: probable cause must exist "at the moment the arrest was made." *Beck*, 379 U.S. at 96. Officers cannot detain first and then use later-acquired facts to fill in the missing basis.

84. Congress wrote that same rule into 8 U.S.C. § 1357(a)(2). That section allows a warrantless arrest only when the officer has "reason to believe" the person is removable and "is likely to escape before a warrant can be obtained." Courts have long treated "reason to believe" in this context as equivalent to probable cause. See *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). The Second Circuit's reasoning is consistent. In *Ojeda-Vinales v. INS*, the court explained that officers may investigate first, then arrest once probable cause exists, not the other way around. 523 F.2d 286, 287–88 (2d Cir. 1975).

85. The second part of § 1357(a)(2) matters just as much. Even if probable cause existed, officers still could not make a warrantless arrest unless they also had reason to believe the person was likely to escape before a warrant could be obtained. Congress used "and," not "or." The regulations repeat that same structure and say a warrant "shall be obtained" whenever the person is not likely to escape before one can be secured. 8 C.F.R. § 287.8(c)(2)(ii).

86. So if ICE had neither a valid preexisting warrant nor concrete facts showing probable cause and escape risk at the moment of arrest, the seizure was unlawful under both the Fourth Amendment and the statute.

**Later Paperwork Cannot Cure the Defect**

87. DHS may try to rely on facts learned after arrest or on later-issued documents. But that argument fails. *Beck* holds that an arrest is judged by what officers knew "at the moment the arrest was made." 379 U.S. at 96. And *United States v. Di Re* holds that an arrest "is good or bad when it starts and does not change character from its success." 332 U.S. 581, 595 (1948).

88. That rule is even stricter here because the regulations already tell ICE what to do. If there is no escape risk, get a warrant first. If  DHS  instead says this was a warrantless arrest, then it must prove that both

18

elements of § 1357(a)(2) existed at the time of arrest. It cannot switch theories in litigation to rescue a defective seizure.

89. The post-arrest regulations do not help the DHS either. Under 8 C.F.R. § 287.3, a person arrested without warrant must be examined by an officer other than the arresting officer unless no other qualified officer is available, and a custody decision must then be made. Those are safeguards for an already lawful warrantless arrest. They do not create arrest authority where none existed.

**The Record Alleged Here Shows Noncompliance with the Required Arrest Protocol**

90. Applying the law to the facts alleged here shows why the arrest was unlawful. First, ICE did not proceed on a valid administrative warrant issued in advance by an authorized officer under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1(b)(1), and 8 C.F.R. § 287.5(e)(2). Petitioner was seized on the street without any warrant being shown.

91. Second, the officers did not identify specific, articulable facts supporting even a brief stop under the Fourth Amendment and 8 C.F.R. § 287.8(b)(2), much less a full arrest. A street stop based on appearance, hunch, location, or general "operation" objectives is not enough. *Brignoni-Ponce*, 422 U.S. at 883–87; *Almeida-Amaral*, 461 F.3d at 235.

92. Third, the officers lacked probable cause to believe Petitioner was removable at the moment of arrest. The Constitution and § 1357(a)(2) do not allow officers to seize first and determine legal status later. *Beck*, 379 U.S. at 96; *Ojeda-Vinales*, 523 F.2d at 287–88.

93. Fourth, ICE did not satisfy the separate "likely to escape" element. Nothing suggests officers could not have used the normal warrant process. To the contrary, the regulations assume they should have done so unless there was real exigency.

94. And fifth, because the arrest was made without a warrant and outside the narrow conditions of § 1357(a)(2), the seizure was not just unreasonable. It was ultra vires. Congress withheld arrest authority unless those conditions were met.

95. governing immigration arrest authority, the writ should issue and Petitioner should be released.

**CLAIM FIVE**

**FAILURE TO FOLLOW MANDATORY DETENTION REGULATIONS AND PROCEDURES RENDERS CUSTODY UNLAWFUL UNDER ACCARDI**

96. Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), an agency must follow its own binding regulations, especially where those regulations protect liberty or other important individual rights. When the Government fails to follow those mandatory procedures, its action is unlawful and cannot support continued detention. *Id.* at 267–68.

97. The immigration detention scheme contains mandatory procedural safeguards governing arrest, processing, and custody determinations. These include 8 U.S.C. §§ 1226 and 1357 and regulations such as 8 C.F.R. §§ 236.1 and 287.3. Where ICE does not follow those procedures, particularly in the immediate aftermath of a warrantless arrest, detention is unlawful from the start and cannot be saved by post hoc rationalizations.

98. The Second Circuit has enforced *Accardi* in the immigration context for decades. In *Montilla v. INS*, the court held that agency failure to follow its own regulations requires invalidation of the resulting action where those regulations protect fundamental rights. 926 F.2d 162, 166–69 (2d Cir. 1991). That principle applies here. The regulations governing arrest and detention are not optional internal housekeeping rules. They are part of the legal framework that protects liberty.

99. These cases show the same thing. The regulations require timely, individualized custody determinations grounded in lawful authority. Failure to comply with those rules makes detention procedurally defective and constitutionally suspect.

**The Regulations Require Process at the Time of Arrest, Not Later**

100. Under 8 C.F.R. § 287.3(c), a person arrested without warrant must be examined without unnecessary delay and advised of the reasons for arrest and the right to counsel. Under 8 C.F.R. § 236.1(c), a custody determination must then be made as to detention or release. These are not loose suggestions. They are mandatory procedural safeguards governing the deprivation of liberty.

101. That is why post hoc explanations do not work. DHS cannot ignore its own rules at the time of arrest and then attempt to cure the violation later through a later memorandum, later form, later warrant,

20

or later bond proceeding. Under *Accardi*, the agency must follow the procedures it prescribed when it acts.

102.    This point has special force in a case involving 8 U.S.C. § 1357(a)(2). That section gives officers a narrow power to arrest without warrant only when they have reason to believe the person is removable and likely to escape before a warrant can be obtained. If officers make a warrantless arrest and then fail to follow the regulations that govern immediate processing and custody decisions, the statutory and regulatory prerequisites for detention were never satisfied.

### CLAIM FOUR:

**IF RESPONDENTS CANNOT PRODUCE THE ADMINISTRATIVE RECORD DEMONSTRATING LAWFUL AUTHORITY FOR PETITIONER'S ARREST AND DETENTION, THE COURT MUST GRANT THE WRIT.**

**Petitioner Requests an Order Directing Expedited Production of DHS Custody and Administrative Records**

103.    Respondents cannot justify Petitioner's continued dention without producing the administrative record that purportedly authorizes his arrest and incarceration. In habeas corpus proceedings, *the Government bears the burden of demonstrating the legal authority for a person's detention*. The writ of habeas corpus exists precisely to assess whether the Executive Branch possesses lawful authority to restrain an individual's liberty. Where the Government cannot demonstrate that authority with competent evidence, the detention cannot stand.

104.    If Respondents cannot produce the administrative record demonstrating lawful authority for Petitioner's arrest and detention, the Court must grant the writ.  At a minimum, Respondents should be ordered to produce the complete administrative record—including the A-file, any alleged removal order, any reinstatement determination, and any custody determination—so that the Court may determine whether the detention complies with federal law and the Constitution. Absent such a showing, Petitioner's continued detention is unlawful and he must be released.

105.    Although habeas proceedings do not authorize plenary civil discovery, they do require <u>a *real return grounded in the actual record—not a curated narrative constructed by the detaining authority*</u>. The governing statutes make that obligation explicit. Under 28 U.S.C. § 2243, the writ "shall be returned

21

within three days unless for good cause additional time is allowed," and the respondent must certify "the true cause of the detention." 28 U.S.C. § 2243 (emphasis added). Section 2241(c)(3) authorizes relief where a person is "in custody in violation of the Constitution or laws … of the United States," and § 2243 further commands that the Court "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

106.    These statutory commands presuppose production of the *actual custody record*. A declaration that paraphrases ICE paperwork while withholding the underlying documents is not a return stating the "true cause" of detention within the meaning of § 2243. Habeas review cannot proceed on summaries, characterizations, or post hoc justifications; it requires the record itself so that the Court—not the Government—can determine the legality of detention.

107.    That principle is longstanding. The Supreme Court has made clear that the Government may not defeat habeas review through conclusory assertions. In *Walker v. Johnston*, 312 U.S. 275, 284–87 (1941), the Court rejected reliance on unsupported official representations and held that courts must examine the underlying facts where detention is challenged. Habeas corpus "cuts through all forms and goes to the very tissue of the structure," requiring production of the factual basis for detention so the court may determine its legality. Id. at 284. That command applies with full force here.

108.    Courts Require Production of The Underlying Detention File - Not Summaries

109.    Consistent with §§ 2241 and 2243, courts have repeatedly required Respondents to produce the actual documentary record of detention where its legality is challenged.

110.    In *Covelli-Chaparro v. Bondi*, No. 2:26-cv-00118 (E.D.N.Y. Jan. 13, 2026), the court ordered a supplemental submission and required Respondents to confirm that they had provided "all documents demonstrating why Petitioner's detention in ICE custody is lawful." That directive reflects the core requirement that habeas review must be grounded in the full evidentiary record, not selective disclosures.

111.    Similarly, in *Minarcaja Concha v. Lyons*, No. 2:25-cv-06695 (E.D.N.Y. Dec. 10, 2025), the court required Respondents to file a detailed supplemental submission addressing the timing, location,

22

and conditions of detention, including records relating to confinement at 535 Federal Plaza—such as sleeping conditions, access to food, medical care, and counsel. The court did not accept generalized assertions; it required the underlying factual record.

112.    In *Hernández Lazo v. Noem*, No. 2:25-cv-06639 (E.D.N.Y. Dec. 10, 2025), the court ordered Respondents to produce specific documentary materials, including records related to the petitioner's immigration status (there, TPS termination documents), confirming that habeas courts may compel production of discrete records necessary to adjudicate the legality of detention.

113.    And in *Ulloa Montoya v. Bondi*, No. 2:25-cv-06363 (E.D.N.Y. Nov. 24, 2025), the court—while granting TRO relief—directed Respondents to produce *"all immigration forms and records referenced"* in the Government's own submission, recognizing that habeas review cannot proceed where the Government selectively cites documents but withholds them from the Court.

114.    Together, these cases establish a consistent rule: when detention is challenged, Respondents must produce the underlying file that purportedly justifies that detention.

115.    <u>The Required Return Includes the Full Arrest and Custody Record</u>

116.    To satisfy §§ 2241 and 2243, Respondents must file a complete and non-selective return that includes the full arrest and custody record, including but not limited to:

> Form I-200 (warrant of arrest), if any;
> Form I-213 (Record of Deportable/Inadmissible Alien);
> Form I-286 (Notice of Custody Determination);
> Forms I-220A or I-220B (release or supervision documents);
> Any detainer, booking, or intake records;
> Any custody classification or custody review determinations;
> Any supervisory approvals, revocations, or policy-based directives;
> Any documentation reflecting the statutory basis invoked for detention;
> Any records reflecting when, how, and by whom the custody decision was made.

This is not discovery—it is the *minimum record necessary* for the Court to "determine the facts" as § 2243 requires.

### **Without The Record, The Court Cannot Discharge Its Statutory Duty**

117.    Absent production of the underlying file, the Court is left with nothing more than the Government's characterization of its own authority. That is precisely what habeas review forbids.

Section 2243 requires the Court to determine the facts—not to accept the Government's account of them.

118.    Where, as here, the legality of the arrest, the existence (or absence) of a warrant, the timing of any custody determination, and the statutory basis for detention are all in dispute, the record itself is the case. Without it, meaningful judicial review is impossible.

119.    Courts have long recognized that when a party fails to produce evidence within its control that would naturally be expected to support its position, an adverse inference may be drawn that the evidence would not support that party's claims. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002). That principle applies with particular force in habeas proceedings, where the Government alone possesses the detention record.

### Expedited Document Production Is Required

120.    Finally, the statute imposes a compressed timeline. Section 2243 requires a return within three days absent good cause. That timeline reflects Congress's judgment that unlawful detention must be addressed promptly—not after prolonged delay.

121.    Accordingly, the Court should order Respondents to:

File a complete return within the timeframe required by § 2243;
Produce the full, unredacted custody and arrest record described above; and
Certify that the production includes all documents relied upon or referenced in support of detention.

Only with that record can the Court fulfill its statutory obligation to "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

### CLAIM FIVE

### REQUEST FOR ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

122.    Petitioner respectfully requests that this Court expressly preserve Petitioner's right to seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C.§ 2412, should Petitioner prevail in this habeas corpus proceeding or obtain the relief requested herein through this Temporary Restraining Order or subsequent order of the Court.

24

123.    EAJA provides that a prevailing party in a civil action against the United States is entitled to an award of attorneys' fees and costs unless the government's position was substantially justified or special circumstances would make an award unjust. See 28 U.S.C. § 2412(d)(1)(A).Immigration habeas corpus proceedings constitute "civil actions" within the meaning of EAJA, and federal courts in this District have recognized that noncitizens who obtain relief from unlawful detention—including release, termination of custody, or injunctive relief—qualify as prevailing parties for purposes of EAJA where the government's conduct is not substantially justified.

124.    Here,  Petitioner has been subjected to an unlawful seizure and detention without statutory authority and in violation of the Due Process Clause of the Fifth Amendment. The government's actions necessitated the immediate filing of this emergency habeas petition and application for a Temporary Restraining Order to prevent irreparable harm, including continued unlawful detention and the risk of transfer beyond this Court's jurisdiction.

125.    Under these circumstances, the government's position lacks substantial justification, and Petitioner should not bear the financial burden of vindicating fundamental constitutional rights. Accordingly, Petitioner respectfully requests that this Court's Temporary Restraining Order expressly provide that nothing in the Court's order shall be construed to waive or limit Petitioner's right to seek attorneys' fees and costs under EAJA, and that Petitioner may move for such fees upon prevailing in this action or obtaining the relief sought, including release from custody or other injunctive relief ordered by the Court.

**REQUEST FOR RELIEF**

Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending swift adjudication of the habeas petition:

a) Prohibiting Respondents from transferring Petitioner outside this District, absent further order of this Court

b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

d) requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative

records, with appropriate relief for noncompliance;

e) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition,

f) granting the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

g) awarding reasonable attorney's fees and costs pursuant to the Equal Access to JusticeAct, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

h) ordering that Respondents not re-detain Petitioner without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Khabazha v. United States* 2:26-cv-02538 *Immigr. & Customs Enf't,* No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025); see *Jagtar Singh v Blanche*, 26-cv-2538 slip op (E.D.N.Y. May 6, 2026)

i) ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, including but not limited to all identification and work authorization cards, clothing, and money. *Jagtar Singh v Blanche* at 9.

j) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/ *S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.

MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
May 12, 2026
New York, NY

**VERIFICATION BY SOMEONE ACTING ON THE PETITIONER'S BEHALF PURSUANT TO 28 U.S.C.§ 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have received this information from staff members at law firms, the office file, investigations of counsel, and from the Petitioner, who has granted his lawyers permission to discuss the events described in this Petition with his family. On the basis of this understanding, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

| Dated: May 12, 2026 | BY: *S. Michael Musa-Obregon*<br><br>S. Michael Musa-Obregon |
| --- | --- |

27

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2026, I caused the foregoing Petition, Emergency Motion, and Order to Show Cause to be served by electronic mail and certified mail by US POSTAL SERVICE on the United States Attorney's Office for the EASTERN DISTRICT OF NEW YORK, Civil Division, and by electronic mail and by certified mail US POSTAL SERVICE on counsel for Respondents, and I further caused service on Respondents in their official capacities via the U.S. Attorney as permitted by applicable rule.

*s/ S. Michael Musa-Obregon*

S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
 michael@musa-obregon.com
718-803-1000
New York, NY

28